# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **TEKWAY, INC.,**<br><br>      Plaintiff,<br><br>v.<br><br>**AT&T SERVICES, INC.,**<br><br>      Defendant. | Case No. 20-cv-04095<br><br>Honorable Thomas M. Durkin<br><br>Magistrate Judge Gabriel A. Fuentes |

## DEFENDANT'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

                                            Respectfully submitted,

                                            */s/Kathryn E. Siegel*
                                                        One of Its Attorneys

Kathryn E. Siegel
Shanthi V. Gaur
Jenna Kim
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL 60654
312.372.5520
ksiegel@littler.com
sgaur@littler.com
jekim@littler.com

Dated: September 28, 2020

**I.     INTRODUCTION**

The gravamen of Tekway, Inc.'s ("Tekway") claim is that AT&T Services, Inc. ("AT&T") interfered with (1) contracts between Tekway and Pinnacle Technical Resources, Inc. ("Pinnacle") based in Texas; and (2) contracts between Tekway and some of its former employees (two of whom reside in Illinois, one in Colorado, and one in New Jersey). The impetus for this dispute is Tekway's mistreatment of its former employees, specifically Gopi Potla and Sandeep Davuluri (based in Illinois) causing them to reach out to an AT&T supervisor (Denise Perez) (in Virginia) to express their unwillingness to continue working for Tekway. Ms. Perez reached out to Pinnacle (in Texas) to look into the situation. The ensuing communications were between Pinnacle personnel (in Texas) and AT&T personnel (in New Jersey, Virginia, and Texas, where AT&T is based).

The Court should dismiss Tekway's claims for lack of personal jurisdiction over AT&T because neither general nor specific jurisdiction exists. In addition, the Court should dismiss the claims based on Tekway's agreement with Pinnacle and Tekway's employment agreements with its former employees pursuant to Fed. R. Civ. P. 12(b)(6) because Tekway cannot make colorable claims against AT&T for tortious interference with those agreements or state a claim for conspiracy.

**II.    BACKGROUND**

Tekway is an IT staffing firm headquartered in Illinois that Pinnacle engaged to provide IT resources to Pinnacle's clients, including AT&T. *See* Complaint ["Compl."] at ¶¶ 2, 15. Through Pinnacle, Tekway supplied employees to AT&T, including former Tekway employees: Gopi Potla, Sandeep Davuluri, Kruthika

1

Agarwal and Vishal Burra. *Id.* at ¶ 21. Each of these former Tekway employees signed an employment contract with Tekway. *Id.* at ¶¶ 112, 121, 129, and 137; *see* **Exhibit A**.[1]

The terms and conditions of the services Tekway provides to Pinnacle are set out in their Supplier Subcontracting Agreement (the "Pinnacle/Tekway Agreement"). *See* **Exhibit B**. AT&T is a third-party beneficiary of the Pinnacle/Tekway Agreement. *See* Compl. at ¶17.

For jurisdictional purposes, AT&T is a citizen of Delaware (state of incorporation) and Texas (principal place of business). *Id.* at ¶3. Pinnacle is a citizen of Texas (state of incorporation and principal place of business). *See* **Exhibit C** at ¶ 2. Both entities are headquartered in Dallas, Texas. *Id.*; *see* Compl. at ¶ 3.

Directly related to this dispute are three (3) other lawsuits in which Tekway brings claims/counterclaims on the same underlying facts.

### A. The DuPage Lawsuit (Now Dismissed).

Tekway sued Mr. Potla and Mr. Davuluri in the Circuit Court of the Eighteenth Judicial Circuit in DuPage County, Illinois on September 10, 2019 (the "DuPage Lawsuit"),[2] and filed for a temporary restraining order (the "First TRO") to prohibit them from providing services to AT&T. *See Tekway, Inc. v. Gopi Polta*[3],

---

[1] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *Am. Postal Workers Union, O'Hare Midway "T" Local 7011 v. Am. Postal Workers Union, AFL-CIO*, 62 F. Supp. 3d 690, 700 (N.D. Ill. 2014).

[2] Courts can take judicial notice of other proceedings that "have a direct relation to [the] matters at issue." *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) (stating that courts have an "obligation" to take judicial notice of proceedings in other courts, "if the proceedings have a direct relation to matters at issue").

[3] Gopi Potla is incorrectly referred to as "Polta" in the DuPage Lawsuit.

2

*Sandeep Daluvuri[4]*, Case No. 2019CH001044 (the "DuPage Lawsuit"). Tekway sought to enforce one year non-compete restrictions against Mr. Potla and Mr. Davuluri. The First TRO was denied on September 12, 2019. *See* **Exhibit D**. On September 12, 2019, Tekway filed for a second temporary restraining order (the "Second TRO") also to prohibit Mr. Potla and Mr. Davuluri from providing services to AT&T. The Second TRO was denied on September 17, 2019. *See* **Exhibit E**.

On September 20, 2019, Tekway amended the DuPage Lawsuit to add AT&T as a party. In January 2020, the DuPage Lawsuit was stayed pending the outcome of litigation between Pinnacle and Tekway in Dallas, Texas. Tekway filed a voluntary dismissal of the DuPage Lawsuit on July 14, 2020, dismissing its claims against Mr. Potla, Mr. Davuluri, and AT&T, which was granted. *See* **Exhibit F**.

### B. The Texas Lawsuit (Summary Judgment Pending).

On September 11, 2019, Pinnacle terminated the Pinnacle/Tekway Agreement with Tekway for cause for failing to comply with the audit provisions of the Agreement and sued Tekway in Dallas County District Court. *See Pinnacle Technical Resources, Inc. v. Tekway, Inc.,* Case No. DC-19-14497 ("the Texas Lawsuit"). Pinnacle's lawsuit sought declaratory judgment that Tekway was prohibited from enforcing any non-compete restrictions against Mr. Potla and Mr. Davuluri that would limit them from providing services through Pinnacle for AT&T, because the Supplier Subcontracting Agreement Section 2 states, "If Pinnacle terminates for cause…Supplier agrees to release the Contractors [Mr. Potla and Mr. Davuluri] from non-competition agreements that would prevent or limit Contractors

---

[4] Sandeep Davuluri is incorrectly referred to as "Daluvuri" in the DuPage Lawsuit.

3

from working for Client [AT&T] or Pinnacle." *See* **Exhibit B**. This lawsuit (the "Texas Lawsuit") is still pending.

In response, Tekway brought counterclaims against Pinnacle, including claims of: (1) breach of contract (based on the Pinnacle/Tekway Agreement and Purchase Orders ("P.O.s") issued for Tekway employees); (2) civil conspiracy; and (3) tortious interference with contracts (based on Tekway's employment contracts with Tekway employees). These are nearly identical to the same claims Tekway has brought against AT&T in the "Present Lawsuit." Pinnacle has filed two motions for partial summary judgment, specifically directed to Tekway's counterclaims. These motions remain pending.

### C. The Agarwal Lawsuit (Motion to Dismiss Pending).

On October 8, 2019, Tekway sued another former employee, Kruthika Agarwal, (the "Agarwal Lawsuit") and filed for a temporary restraining order and preliminary injunction in DuPage County Circuit Court. *See Tekway, Inc. v. Vskruthika Agarwal,* Case No. 19 CH 001156. The Agarwal Lawsuit was removed on the basis of diversity jurisdiction to the United States District Court for the Northern District of Illinois Eastern Division on October 10, 2019. *See Tekway, Inc. v. Vskruthika Agarwal,* Case No. 19 C 6867, N.D. Ill. 2019 (Honorable Steven C. Seeger). The Agarwal Lawsuit seeks to enforce a one-year non-compete against her. A motion to dismiss has been pending in the Agarwal Lawsuit since December 16, 2019.

### D. Present Lawsuit

Tekway filed the instant lawsuit against AT&T on July 10, 2020, asserting

4

nearly identical claims to those that it dismissed in the DuPage Lawsuit.

### III. ARGUMENT

#### A. Tekway Has Failed To Allege Sufficient Facts To Establish That AT&T Is Subject To Personal Jurisdiction In Illinois.

Tekway's Complaint now must be dismissed because it fails to allege facts that would support subjecting AT&T to personal jurisdiction in Illinois. AT&T is a Delaware corporation with its principal place of business in Texas. *See* Compl. at ¶ 3. Given that AT&T is neither incorporated in nor has its principal place of business in Illinois, Tekway has the burden to establish personal jurisdiction, which it has failed to do.

Under Rule 12(b)(2), Tekway must show that this Court has personal jurisdiction over AT&T and provide specific facts, not conclusory assertions, to support jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the Supreme Court "raised the bar" for establishing general personal jurisdiction. *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015). Under *Daimler's* "stringent" standard, a corporation is subject to general jurisdiction only in "the state of [its] principal place of business and the state of its incorporation." *Id*. *Daimler* cautioned that a defendant may be deemed "at home" in a jurisdiction other than its state of incorporation and

5

principal place of business only in a truly "exceptional case" – *e.g.,* when its *de facto* principal place of business and its formal headquarters are in different jurisdictions. *Daimler*, 134 S. Ct. at 755–58 & n.8. Even a "substantial, continuous, and systematic course of business" is not enough to render a defendant at home in a forum, because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 761–62 & n.20 (quotation marks omitted); *see also Denton v. Air & Liquid Systems Corporations*, No. 13–cv–1243, 2015 WL 738659, at *2 (S.D. Ill. Feb. 19, 2015) (defendant "undoubtedly has a presence in Illinois. However, the Supreme Court has made it clear that the mere presence of a defendant in the forum does not subject it to all-purpose jurisdiction in that forum.").

Here, in support of asserting personal jurisdiction over AT&T in Illinois, Tekway only alleges that "AT&T has sufficient contacts with the State of Illinois." This falls short of meeting Tekway's burden to establish an "exceptional case," i.e. that AT&T has a *de facto* principal place of business or formal headquarters in Illinois. *See Price v. Schlee & Stillman, LLC*, No. 16 C 8020, 2017 WL 2311229, at *2 (N.D. Ill. May 26, 2017) (Durkin, J.) (holding that general jurisdiction over the defendant was lacking where the defendant was not incorporated or headquartered in Illinois and the Plaintiff failed to allege any systematic or continuous affiliation with Illinois)*; Daimler*, 134 S. Ct. at 755–58 & n.8. Thus, Tekway has failed to plead facts that would establish general jurisdiction over AT&T in Illinois.

Tekway also has not established that there is specific personal jurisdiction

6

over AT&T. Again, "[f]or the court to exercise specific jurisdiction over [AT&T] … [Tekway's] claims must arise out of [AT&T's] contacts with Illinois." *See Price*, 2017 WL 2311229, at \*3 (declining to exercise personal jurisdiction where the cause of action arose from activities outside the state of Illinois); *Shanghai Daisy LLC v. PositivEnergy, Inc.*, No. 19 C 5901, 2020 WL 4365883, at \*6-7 (N.D. Ill. July 30, 2020) (Durkin, J.) (declining to find specific jurisdiction and holding that "the proper question 'is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way'"); *Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 835-37 (N.D. Ill. 2018) (Durkin, J.) (the fact that the defendant allegedly intentionally inflicted an injury on an Illinois-connected business relationship based on actions taken outside Illinois does not evidence any suit-specific contacts by the defendant with Illinois itself).

Significantly, the Complaint is devoid of allegations connecting AT&T to Illinois with respect to the alleged tortious interference claims or civil conspiracy claims.[5] Tekway merely alleges, in conclusory fashion, that AT&T does business and has employees in this judicial district and has sufficient contacts with Illinois to satisfy the minimum constitutional requirements. *See* Compl. at ¶ 6. Tekway makes no attempt to explain: (1) who acted on behalf of AT&T; (2) where such person was located; (3) where the alleged tortious acts occurred; (4) where the alleged tortious acts were directed; or (5) any other substantive fact that indicates personal jurisdiction is proper in Illinois. As explained above, these conclusory statements

---

[5] Indeed, the word "Illinois" is not used one time in the factual section of the Complaint. *See* Compl. at ¶¶15-58.

7

cannot establish personal jurisdiction over AT&T. *See Daimler*, 134 S. Ct. at 755–58 & n.8. Because Tekway has failed to meet its burden to establish that this Court has personal jurisdiction (either general or specific) over AT&T, the Court should dismiss Tekway's Complaint based on this fatal deficiency.

### B. Tekway Cannot Maintain Its Claims For Tortious Interference Or Conspiracy.

Based on the above, Tekway's Complaint should be dismissed for lack of personal jurisdiction. However, even if the Court were to analyze the claims at issue, all of Tekway's claims against AT&T are subject to dismissal because Tekway fails to state a claim for relief.

Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the plaintiff "cannot unilaterally set forth the necessary allegations that entitle him to recovery," then "judgment should be [entered] for the defending party" and "there is no need to continue the suit." *Gomez v. Illinois State Bd. of Ed.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Tekway has not satisfied these pleading requirements.

8

### 1. Tekway Cannot Establish A Tortious Inference With Contract Claim Based On The Pinnacle/Tekway Agreement (Counts I-IV).

Tekway cannot maintain its tortious interference of contract claims based on the Pinnacle/Tekway Agreement because there is nothing in the Agreement or Pinnacle P.O.s that prevent a Tekway employee from transferring elsewhere.

Tekway's tortious interference claims based on the Pinnacle/Tekway Agreement and P.O.s are premised on the allegation that AT&T participated in a scheme to transfer Mr. Potla, Mr. Davuluri, Mr. Burra and Ms. Agarwal away from their employment with Tekway. Compl. at ¶¶ 40, 55, 60-110. However, Tekway fails to point to **any** language in the Agreement or P.O. that prevents such a transfer.

A claim for tortious interference with contract requires "(1) the existence of a valid contract between [the plaintiff] and another; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) an actual breach of the contract; and (5) damages." *ATC Healthcare Services, Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 958 (N.D. Ill. 2016).

"A necessary prerequisite to the maintenance of an action for tortious interference with contract is a defendant's intentional and unjustified inducement of a breach of contract .... [A]nd in order to establish that tort there must be evidence of a breach of contract caused by the defendant." *Webb v. Frawley*, 906 F.3d 569, 579 (7th Cir. 2018) (citing *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill.App.3d 17 (1st Dist. 1998)). "Only a duty imposed by the terms of a contract can give rise to a breach." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (internal quotation marks omitted); *see Boyd Grp. (U.S.) Inc. v.*

9

*D'Orazio*, No. 14 CV 7751, 2015 WL 3463625, at *5 (N.D. Ill. May 29, 2015) (dismissing breach of contract claims where the alleged breaches were not tied to any duty imposed under the contract).[6]

Here, Tekway fails to point to any clause in the Pinnacle/Tekway Agreement or in the P.O.s which prevented Pinnacle from transferring any of the former employees. That is because there is no provision in the Pinnacle/Tekway Agreement or P.O.s that barred the transfer of the former employees. *See* **Exhibits B & G**. To the contrary, the Pinnacle/Tekway Agreement expressly allows AT&T and Pinnacle to hire the former employees. *Id.* at ¶ 8. Thus, Tekway's tortious interference claims based on the Pinnacle/Tekway Agreement must be dismissed as Tekway has failed to allege the necessary elements for such a claim.

> **2. Tekway Cannot State A Claim For Tortious Interference Based On The Tekway-Employee Agreements (Counts V-IX).**

Additionally, Tekway alleges claims that AT&T tortiously interfered with the Tekway-Employee Agreements and with prospective advantage or business relationship (based on AT&T allegedly inducing the former employees to breach their business relationship with Tekway). Such claims fail for a number of reasons.

Tekway's tortious interference claims based on the Tekway-Employee Agreements (of either contract or prospective relationship) are premised on its alleged future expectancy that the Former Tekway employees would continue to

---

[6] Although the Court does not need to decide choice of law issues at this stage, Texas (the choice of law that governs the Pinnacle/Tekway Agreement) requires a defined breach as well. *See Farmers Ins. Exch. v. Greene*, 376 S.W.3d 278, 282 (Tex. App.—Dallas 2012), aff'd, 446 S.W.3d 761 (Tex. 2014) ("But a breach of contract occurs when a party fails to perform an act that it has expressly or impliedly failed to perform. . .. There is no promised performance here. It follows that there can be no violation or breach.").

10

work for Tekway pursuant to the Agreements. *See* **Exhibit A**. First, *Tekway* fails to mention that **Tekway itself** terminated the employment of the former Tekway employees, not vice versa, as it admits in the counterclaim asserted in the Texas Litigation. *See* **Exhibit H** at ¶ 23. Thus, Tekway cannot pass the blame for these employees ending their employment with Tekway onto AT&T.

Furthermore, Tekway's tortious interference claims premised on the Tekway-Employee Agreements **also** fail as a matter of law because: (1) AT&T could not have tortiously interfered with contracts or relationships with the Former Tekway employees because they were employed "at-will" by Tekway; and (2) the post-employment restrictions contained in the agreements are unenforceable as a matter of law.

The Tekway-Employee Agreements provide that the Employer or Employee can terminate the Employment Contract without assigning any cause with a written notice of two weeks after fulfilling 12 consecutive months of employment. *See* **Exhibit A**. Mr. Potla and Mr. Davuluri executed their contracts with Tekway on October 8, 2017 and Tekway terminated their employment respectively on August 27, 2019 and August 28, 2019 (22 months after executing the contract). *Id*. Mr. Burra executed his contract with Tekway in September 2018 and Tekway terminated his employment on October 8, 2019 (13 months after executing the contract). *Id*. Ms. Agarwal executed her contract with Tekway on June 10, 2018 and Tekway terminated her employment on October 2, 2019 (15 months after executing the contract). *Id*. Their terminations all occurred before their two-year anniversary.

11

*Id.*

Accordingly, because each of these Former Tekway Employees had completed 12 months of employment by August 2019 (when AT&T was alleged to have interfered with their Agreements) their employment was at-will. As a matter of law, "inducing a third party to cancel an at-will contract does not result in a breach of contract." *ATC Healthcare Services, Inc.*, 192 F. Supp. 3d at 958. As such, Tekway cannot maintain its claims of tortious interference with contracts as a matter of law.

Furthermore, Tekway's tortious interference claims (of contract, prospective advantage, or business relationship) based on AT&T allegedly inducing the Former Tekway employees to violate restrictive covenants likewise cannot proceed because the post-employment restrictions are unenforceable as a matter of law. Each of these claims are dependent on a valid contract or business relationship. *See ATC Healthcare Services, Inc.*, 192 F. Supp. 3d at 959 (". . . in order for such a breach to be possible, the non-compete clauses would need to be valid . . ."); *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 808 (N.D. Ill. 2011) ("'In other words, without a valid non-solicitation clause there would have been no 'unjustified tampering,' [] and thus no viable claim for tortious interference with economic advantage."); *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill.App.3d 365 (1st Dist. 2004) (interference with business relationships or expectancy requires "some impropriety.").[7]

The Agreements are unenforceable for two independent reasons: (1) they lack

---

[7] *See also Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1017 (N.D. Ill. 2014), aff'd, 793 F.3d 748 (7th Cir. 2015) ("As set forth above, Instant failed to satisfy the threshold element: a valid and enforceable contract. Since the Restrictive Covenants are not valid or enforceable, they cannot serve as the underlying basis for Instant's tortious interference with contract claim.").

12

sufficient consideration under Illinois law because the sole consideration provided by Tekway to the former employees was continued employment, but none of the former employees worked for Tekway for at least two years; and (2) the covenants are facially overbroad because they have no geographic restriction and no limitation in scope to the job duties that the former employees performed for Tekway, thereby preventing the former employees from being employed by a competitor in any capacity whatsoever. *See Axion RMS, Ltd. v. Booth*, 2019 IL App (1st) 180724, ¶ 24 (holding that there was inadequate consideration under existing case law where the only consideration given to the employee was continued employment which lasted less than two years) (citing *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327); *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989 (N.D. Ill. 2014), aff'd, 793 F.3d 748 (7th Cir. 2015) (Under Illinois law, employment agreements' restrictive covenants for two years post-employment were not supported by adequate consideration with respect to three former employees, precluding enforcement of covenants against them, where employees had only been employed by employer for less than two years, which was not substantial period of time beyond threat of discharge); *see also AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, ¶¶ 35-36 (non-compete unenforceable for lack of geographic restrictions where enforcement of the non-compete "would bar the individual from earning a living as a wholesale broker for all professional liability insurance products and services in every location within the 50 states and territories of the United States"); *Medix Staffing Solutions, Inc. v. Dumrauf*, 2018 WL 1859039, at *3

13

(N.D. Ill. Apr. 17, 2018) (finding the non-compete unenforceable where the provision would prevent the former employee from taking any number of roles at another industry player); *Texlon v. Hoffman*, 720 F. Supp. 657, 664-65 (N.D. Ill. 1989) (refusing to enforce a non-compete agreement where the scope of the prohibited activities were so broad that the agreement would prevent the former employee's ability to work for a competitor even as a janitor). Thus, Tekway cannot maintain its tortious interference claims based on the Tekway-Employee Agreements against AT&T.

### 3. Tekway Cannot Maintain A Claim For Civil Conspiracy Because Its Claims For Tortious Interference Fail (COUNT X).

Tekway cannot establish a viable tortious interference claim against AT&T, and thus, the conspiracy claim fails because it is a derivative theory of liability and not a stand-alone claim. To state a claim for civil conspiracy, Tekway must allege facts establishing that: (1) the existence of an agreement between two or more people (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) that one of the parties performed an overt act in furtherance of the common scheme, and (4) the overt act caused an injury. *Mitchell v. Vill. of Matteson*, No. 20 CV 990, 2020 WL 3035965, at *7 (N.D. Ill. June 5, 2020). Conspiracy is not a separate tort in Illinois. *Id.* (citing *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070). Ultimately, "[b]ecause conspiracy is not an independent tort, 'if a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails.'" *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49 (quoting *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App.

14

3d 416, 432 (2000)).

Here, Tekway fails to state a claim for tortious interference as discussed above. *See* supra § III(B)(1) and (2). As such, Tekway's civil conspiracy claim, premised on those underlying causes of action necessarily fails. *See Mitchell*, 2020 WL 3035965, at *7; *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 59 ("[T]he conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails.").

## IV. CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice for the reasons set forth above.

**CERTIFICATE OF SERVICE**

Kathryn Siegel, an attorney, hereby certifies that on September 28, 2020, she caused the foregoing *Defendant's Memorandum of Law in Support of Its Motion to Dismiss* to be electronically filed with the Clerk of the Court, using the court's CM/ECF system. Notification of such filing will be sent to the following party:

**DAMON MATHIAS**
MATHIAS RAPHAEL PLLC
9 E. Superior, Suite 400
Chicago, IL 60611
312.738.5323 (p)
damon@mrlaw.com

                                                       */s/ Kathryn Siegel*
                                                      Kathryn Siegel

4848-9659-9241.17 056169.1697